Bayard,
 
 Chief Justice,
 

 charged the jury. — The act of assembly does not lessen the responsibility of the mill owner at common law for injuries resulting from his own acts or the acts of his agents, or the culpable negligence of either; but, regarding mill property as one in the preservation of which the public is interested, as an additional safeguard imposes the
 
 duty
 
 upon the
 
 owner, possessor
 
 or person residing at or near the mill, to give notice to the
 
 owner, possessor
 
 or
 
 keeper
 
 of the mill below, of any
 
 toilful
 
 or
 
 accidental
 
 discharge of an
 
 unusual quantity
 
 of water; and imposes a penalty upon ihc person who neglects the performance of that
 
 duty,
 
 of double the amount of the damages which may be sustained bv such an unusual discharge
 
 *63
 
 of water. There are four points which must be established to enable the plaintiff to recover. 1. That the defendant is either the owner, possessor or person having charge of the upper mill.
 
 2.
 
 That there was an unusual discharge of water either wilful or accidental. 3. That no notice was given. 4. That the injury is the consequence of such discharge.
 

 There is no dispute as to the first point; it is admitted that the defendant is the owner of the upper mill.
 

 On the second point, whether there was an unusual quantity of water discharged from Horsey’s mill on this occasion, the defendant’s counsel have revived in the argument a question on which the. court has heretofore in the course of this cause been obliged to express an opinion; and which was also decided by this court at the last term in a similar case. The term
 
 unusual quantity of ivater,
 
 refers to the
 
 usual
 
 discharge — the volume of water usually consumed by the mill and wasted from the pond; that is, the force and supply of the stream, having regard to its natural sources and a reasonable reference to the state of the weather. All beyond this is unusual. The act must have a reasonable construction, and the persons who passed it must be supposed to have been reasonable men, and to have had reasonable and proper objects in view in passing the law. It was intended to protect mill property; it is so entitled. It was designed to protect the owners of lower mills against the wilful or accidental discharge of an unusual quantity of water, by imposing on the upper mill owner the duty of giving notice of such unusual discharge of water on any occasion, whether wilful or accidental. The lower mill owner must be supposed to know what quantity of water usually comes down, having reference to the force of the stream and the season, and to provide against it; but whenever the upper mill sends down any quantity of water beyond this, such a discharge could not be anticipated by the lower owner, and he is
 
 reasonably,
 
 as well as by the express provisions of this law, entitled to actual notice of such discharge. In many cases this question may be difficult of determination, as it would be impossible to measure the discharge of water with great nicety; but there cannot be much if any difficulty in cases of a discharge of the whole contents of a mill pond by the wilful or accidental breaking of the dam. Such occurrences are not
 
 usual,
 
 and few if any mills are prepared to resist them without notice; in such cases, therefore, it is pre-eminently the duty of the upper mill owner to give notice as soon as the nature of the case will admit of it.
 

 It is not denied that the lower dam of Ross was broken; and, as no
 
 *64
 
 other cause has been assigned for the breach than the unusual discharge of waterfrom above, it must be presumed to have been broken by such discharge. It remains then to inquire, whether
 
 notice
 
 was given, in the language of the act,
 
 as soon as the nature of the case would admit.
 
 Each case must depend upon its own circumstances for the settlement of this point.
 

 In the case of a wilful discharge of water in fair weather, as for the purpose of repairing, notice should be given before doing the act; but in the case of a wilful discharge of water under the pressing circumstances of a storm, where to preserve other parts it was necessary, not merely to waste it, but to cut a part of the dam to preserve the whole, it would be sufficient to give notice as soon as the circumstances would permit, such as the facility of conveyance, the number of hands employed, the pressing demand upon their attention for the preservation of the property.
 

 The character of the notice must be determined by the same reasonable construction of the law in reference to the mischief it was designed to remedy,.and the duty it imposes. That duty is, in case of the wilful or accidental discharge of an unusual quantity of water, to give notice of such discharge as soon as the nature of the case will admit. The duty of providing for the safety of his neighbor’s mill cannot be paramount to the right of taking care of his own. This would be unreasonable. If the force of tempest and flood was so great on this occasion as to require the presence of Mr. Horsey and all under his command, to preserve his own mill and dam, he could not reasonably be required to detach a part of that force as a messenger to the lower mill; in this state of peril to all mill propertjr, arising from this unusual storm, all persons w'ere bound to be vigilant to provide for its effects; and though the duty of transmitting actual notice of breaches from those above to those below, attached the moment it could be done without abandoning their own property, and in fact, increasing the danger to all, it is not reasonable, and the law does not require that it should be given sooner.
 

 The notice is to be given to the owner, possessor or keeper, or either of them, residing at or nearest to the mill. The burthen of the proof of this fact is upon the defendant. It is a
 
 duly
 
 to be performed by him; and he must show that he has performed it. If he has no? proved to the satisfaction of the jury that he gave notice as soon as the nature of the case would admit of, to the person entitled to receive it, the verdict ought to be for the plaintiff. In the event of finding for the plaintiff, the question arises as to the measure of the
 
 *65
 
 damages. This act is penal as well as remedial. The gist or foundation of the action is not the injury sustained, but the
 
 omission
 
 of
 
 a duly
 
 for which a penalty is imposed. For this reason the court think that the question of damages is confined to the immediate damage sustained by the destruction of the property, and not to the consequential damage resulting from the loss of profits. The immediate damage is easily proved, and is, therefore, the proper measure, and for the most part would be a tolerably uniform one; but the consequential damage, which would depend upon the skill and capital and industry of the owner, introduces considerations too complicated for the consideration of the jury; and the double damages would, probably, more than cover such consequential loss.
 

 Cullen, Bayard, Frame,
 
 and
 
 Houston,
 
 for plaintiff
 

 Ridgely, Booth
 
 and
 
 Bates,
 
 for defendant.
 

 The plaintiff had a verdict of $75, which, on motion, the court doubled.